Judge Hellerstein

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**07 CIV 9587**

--------------------------------x
RICHMOND MERCANTILE LTD FZC,          :

**ECF**

                    Plaintiff,    :    **VERIFIED COMPLAINT**

          -against-                   :

ARABIAN INDUSTRIAL AND                :
CONSTRUCTION GROUP d/b/a
ARABIAN INDUSTRIAL &                  :
CONSTRUCTION GROUP and d/b/a
ARABIC GROUP FOR INDUSTRY             :
AND CONSTRUCTION CO. and d/b/a
ARABIAN INDUSTRY AND                  :
CONSTRUCTION CO. GROUP LTD. and
d/b/a ARABIAN GROUP INDUSTRIAL    :
AND CONST. CO.,
                    Defendant.   :
--------------------------------x



      Plaintiff, RICHMOND MERCANTILE LTD FZC, (hereinafter

referred to as "Plaintiff"), by and through its attorneys,

Cardillo & Corbett, as and for its Verified Complaint against

the Defendant, ARABIAN INDUSTRIAL AND CONSTRUCTION GROUP, d/b/a

ARABIAN INDUSTRIAL & CONSTRUCTION GROUP, d/b/a ARABIC GROUP FOR

INDUSTRY AND CONSTRUCTION CO., d/b/a ARABIAN INDUSTRY AND

CONSTRUCTION CO. GROUP LTD., and d/b/a ARABIAN GROUP INDUSTRIAL

AND CONST. CO.(hereinafter referred to as "Defendant"),

alleges, upon information and belief, as follows:

      1.    This is an admiralty and maritime claim within

the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure and 28 United States Code § 1333.

      2.    At all times material to this action, Plaintiff

was, and still is, a foreign company duly organized and

existing under the laws of Sharjah, U.A.E.

3.    Plaintiff was, at all material times, the disponent owner of the M/V "OCEAN GULF" (hereinafter the "Vessel").

4.    Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law, with a principal place of business in Al Monawir Complex, Al Farwaniya Main Street, Al Farwaniya, Kuwait City, Kuwait, and was at all material times the charterer of the Vessel.  Upon information and belief, Defendant does business under the names, ARABIAN INDUSTRIAL AND CONSTRUCTION GROUP, ARABIAN INDUSTRIAL & CONSTRUCTION GROUP, ARABIC GROUP FOR INDUSTRY AND CONSTRUCTION CO., ARABIAN INDUSTRY AND CONSTRUCTION CO. GROUP LTD. and ARABIAN GROUP INDUSTRIAL AND CONST. CO.

5.    By a voyage charter party on the Gencon form dated April 27, 2004, the Plaintiff agreed with Defendant to carry a cargo of about 32,000 tons of bulk aggregate from one safe berth, Mina Saqr, Ras Al Khaima, to one safe berth, Shuaiba, Kuwait (the "Charter Party").

6.    During the course of performance of the Charter Party, certain disputes arose between the parties and Plaintiff commenced arbitration in London as provided by Clause 19(a) of the Charter Party, appointing Alan Oakley, as arbitrator, and

2

called upon Defendant to appoint an arbitrator.

7.    Defendant failed to appoint an arbitrator and pursuant to the provisions of the English Arbitration Act of 1996, Mr. Oakley acted as sole arbitrator.

8.    The sole arbitrator found Defendant liable to Plaintiff for demurrage and ordered Defendant to pay Plaintiff the sum of $285,822.22, plus interest thereon at a rate of 5% per annum compounded every three months, and costs pursuant to a Final Arbitration Award dated November 2, 2004.  A copy of the Final Arbitration Award is attached hereto as Exhibit A.

9.    Plaintiff paid the arbitrator's fees in the amount of £2,175 and pursuant to the terms of the Arbitration Award, it is entitled to immediate reimbursement from Defendant of the sum so paid, together with interest thereon at a rate of 6.5% per annum compounded every three months, in the total amount of £2,737 (US$5,616.08).

10.    Plaintiff has incurred attorneys' fees in the amount of $36,366.28 in connection with the Final Arbitration Award and attempts to enforce it in Kuwait.  The arbitrator has reserved his power and jurisdiction to determine Owners' recoverable costs, including attorneys' fees.

11.    The following is the total due as of October 25, 2007, by Defendant to Plaintiff, plus interest on the full amount due claim until October 25, 2008:

3

|   |   |   |
|---|---|---|
| A. | Principal claim and interest: | $340,184.48 |
| B. | Arbitration fees with interest: | 5,616.08 |
| C. | Attorneys' fees: | 36,366.28 |
| D. | Interest until 10/25/08 | 25,452.92 |
|   | Total: | $407,619.76 |

12.   The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN Amro Bank NV, American Express Bank, Bank of America, Bank of Communications Co. Ltd. New York Branch, Bank of New York, Barclays Bank, BNP Paribas, Citibank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, UBS AG and/or Wachovia Bank, which are believed to be due and owing to the Defendant.

13.   The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia,* any property of the

4

Defendant held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, and to secure Plaintiff's claim as described above.

**WHEREFORE,** Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, ABN Amro Bank NV, American Express Bank, Bank of America, Bank of Communications Co. Ltd. New York Branch, Bank of New York, Barclays Bank, BNP Paribas, Citibank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, UBS AG and/or Wachovia Bank, which are due and owing to the Defendant, in the amount of $407,619.76 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear

5

and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

   C. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

   D. That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
    October 26, 2007

       CARDILLO & CORBETT
       Attorneys for Plaintiff
       RICHMOND MERCANTILE LTD FZC

By: _____
    Tulio R. Prieto (TP 8455)

       Office and P.O. Address
       29 Broadway, Suite 1710
       New York, New York 10006
       Tel: (212) 344-0464

6

**ATTORNEY'S VERIFICATION**

State of New York )
                  ) ss.:
County of New York)

      1.    My name is Tulio R. Prieto.

      2.    I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

      3.    I am a partner in the firm of Cardillo & Corbett, attorneys for the Plaintiff.

      4.    I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

      5.    The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

      6.    The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

      7.    I am authorized to make this Verification on

7

behalf of the Plaintiff.

Dated:      October 26, 2007
            New York, New York


                                    _____
                                    Tulio R. Prieto


Sworn to before me this
26th day of October, 2007

                                    _____
            NOTARY PUBLIC


            CHRISTOPHIL B. COSTAS
        Notary Public, State of New York
               No. 31-0773693
          Qualified in New York County
       Commission Expires April 30, 2011

8

# Exhibit

# A

**IN THE MATTER OF THE ARBITRATION ACT 1996**

**AND**

**IN THE MATTER OF AN ARBITRATION**


B E T W E E N


Richmond Mercantile Ltd FZC of Sharjah U.A.E.                Claimants
                                                            (Owners)

and

Arabian Industrial and Construction Group of Kuwait          Respondents
                                                            (Charterers)


**"OCEAN GULF"**

Charter party dated 27th April 2004

**FINAL ARBITRATION AWARD**

**IN THE MATTER OF THE ARBITRATION ACT 1996**

**AND**

**IN THE MATTER OF AN ARBITRATION**


B E T W E E N


Richmond Mercantile Ltd FZC of Sharjah U.A.E.                Claimants
                                                             (Owners)


and


Arabian Industrial and Construction Group of Kuwait
        Respondents
                                                             (Charterers)


### "OCEAN GULF"

Charter party dated 27th April 2004

### FINAL ARBITRATION AWARD


**WHEREAS:**

1. By a charter party on the Gencon form, incorporating additional terms as agreed between
   the parties on 27th April 2004 ("the Charter"), the Claimants ("the Owners") chartered
   their vessel "OCEAN GULF" to the Respondents ("the Charterers") to load and carry a
   cargo of about 32,000 tonnes of bulk aggregate from "one safe berth one safe port Mina
   Saqr, Ras Al Khaima to one safe berth one safe port Shuaiba, Kuwait."

3

2. Pursuant to Clause 19 (d) of the charter party, the law and arbitration provisions were provided in Clause 19 (a) thereto. Clause 19 (a) provided for arbitration in London in accordance with English law.

3. Following a dispute between the parties, the Owners appointed me, Alan Oakley of 28 Leeward Court, Asher Way, London E1 as their nominated arbitrator. In accordance with the provisions of sections 16 and 17 of the Arbitration Act 1996 ("the Act"), the Owners called upon the Charterers to appoint an arbitrator. However, the Charterers failed to do so. Therefore, on 29th July 2004, pursuant to the provisions of section 17(2) of the Act, the Owners appointed me Sole Arbitrator in the reference. I am a member the London Maritime Arbitrators Association and a member of the Baltic Exchange in London.

4. The seat of this arbitration is in England.

5. On 23rd August 2004, the Owners served claim submissions and claimed the following:
   i)   load port demurrage in the sum of US$124,000;
   ii)  discharge port demurrage in the sum of US$161,822.22;
   iii) interest; and
   iv)  costs.

6. The Charterers denied liability for the sum claimed. Effectively, their defence was that they were not a party to the charter party.

7. Neither party requested an oral hearing. Pursuant to Section 52(4) 0f the Arbitration Act 1996, the reasons for my award are attached hereto and form part of this final arbitration award.

   **NOW I,** the said Alan Oakley having taken upon myself the burden of this reference and having carefully and conscientiously considered the evidence (all of it documentary) and submissions put before me by the parties and having given due weight thereto, **DO HEREBY MAKE, ISSUE AND PUBLISH**  this my **FINAL ARBITRATION AWARD** as follows:

4

**I FIND AND HOLD** that the Owners' claim succeeds in full.

**I THEREFORE AWARD AND DIRECT** that:

i) the Charterers shall forthwith pay the Owners the sum of US$285,822.22 (two hundred and eighty-five thousand, eight hundred and twenty-two United States dollars twenty-two cents), together with interest at the rate of 5% per annum compounded at three monthly rests from 13th May 2004 until the date of payment;

ii) the Charterers shall bear and pay their own and the Owners' recoverable costs of this final arbitration award which, unless agreed, shall be determined by me in an Award on Costs, pursuant to section 63(3) of the Arbitration Act 1996, on the basis set out in section 63(5) of the Act. I hereby reserve my jurisdiction accordingly; and

iii) the Charterers shall also bear the costs of this final arbitration award, which I hereby settle in the sum of £2,175 provided that if, in the first instance, the Owners shall have paid any amount in respect of my fees, they shall be entitled to an immediate refund of that amount from the Charterers, together with interest on that sum calculated at the rate of 6.75% per annum, compounded at three monthly rests from the date of payment until the date of reimbursement.

Given under my hand this 2nd day of November 2004.

Alan Oakley                                          Witness

5

### "OCEAN GULF"

Charter party dated 27th April 2004

### REASONS FOR MY FINAL ARBITRATION AWARD

1.  The "OCEAN GULF" ("the Vessel") is a 33,230 tonne deadweight bulk carrier, built in 1989. By a charter party dated 27th April 2004, the Claimants ("the Owners) chartered the Vessel to the Respondents ("the Charterers") to load and carry a cargo of 32,000 tonnes of aggregate from "one safe berth one safe port Mina Saqr, Ras Al Khaima to one safe berth one safe port Shuaiba, Kuwait."

2.  In this dispute, the Owners claimed unpaid demurrage in the total sum of US$285,822.22, together with interest and costs. The Charterers denied liability for the sum claimed. However, since the Charterers' defence was essentially that they were not a party to the charter party, it is helpful if I recite the correspondence sent by the Charterers' legal representatives leading to this award.

8.  On 28th May 2004, The Owners' legal representative Sahb Consultancy Ltd of London ("Sahb") notified the Charterers, namely, Arabian Industrial & Construction Group of Kuwait ("the Charterers") that they were declaring arbitration in respect of unpaid demurrage in the sum of US$283,911.80 and that they were appointing me as their nominated arbitrator. They requested the Charterers to nominate their own arbitrator within 14 days. The Charterers failed to respond to the Owners' request and on 15th June, the Owners gave the Charterers 7 clear days notice to nominate an arbitrator; otherwise they would appoint me sole arbitrator in accordance with the provisions of Section 17(2) of the Arbitration Act 1996.

6

9. On 22nd June, the Charterers' legal representative, Al Wagayan, Al Awadhi & Al Saif, sent a fax to the Owners, effectively denying liability for the sum claimed. They contended that their client was not a party to the charter party and that the true identity of the charterers were the shippers, namely, a company called Kasr Al Bahar.

10. Since the Charterers failed to nominate an arbitrator in accordance with the provisions of Clause 19 (a) of the charter party, on 29th July, Sahb appointed me sole arbitrator in the reference.

11. On 23rd August, the Owners served claim submissions. On 25th August, I ordered the Charterers to serve defence submissions on or before 27th September. I also sent the parties a copy of the procedural guidelines issued by the London Maritime Arbitrators Association, explaining that if they had any questions regarding the process of London arbitration, they should let me know.

12. On 27th September, Anwar Al Bisher & Partners, sent me a fax, copied to Sahb, explaining that they were the lawyers for Arabian Industrial & Construction Group. They also referred to a legal action that they were advancing against Sahb in the Kuwaiti court, citing the Vessel's defective cranes and substantial delays. Their fax also stated:

*"... All the agreements concluded by our client in connection with their subject shipment are subject to the Kuwaiti law. ...*

*Our client is not a party to any agreement with Sahb and, therefore, Sahb should not be allowed to invoke any type of arbitration against our client. ...*

*Sahb's negotiations and agreements were with the UAE-based Qasr AL Bahar but not with our client. As aforesaid, our client's agreements were with Qasr Al Bahar and under Kuwaiti law. We are bewildered that Sahb which has privity of contract with Qasr Al Bahar would arbitrarily attach our client with which it has no privity of contract and still ignores the UAE-based Qasr Al Bahar. ...." (sic)*

13. Given that the Charterers' defence was that they were not a party to the charter party and that they provided no evidence to dispute the Owners' laytime/demurrage calculations, I requested the Owners to provide all evidence upon which they wished to rely, including evidence relating to the true identity of the Charterers, before proceeding to my award.

14. On 2nd October, Anwar Al Bisher & Partners sent a fax to Sahb, which was copied to me and stated:

> "1. Our client is a merchant who merely concluded an agreement with the UAE based Qasr Al Bahar under the Kuwaiti law for purchasing certain goods (lime stone) from the UAE and for receiving same in Kuwait. ...
>
> 2. Your client's contractual arrangement has been made with the UAE based Qasr Al Bahar but not with our client. On the other hand, all of our client's contractual arrangement in connection with MV "Ocean Gulf" were with the Qasr Al Bahar but not with your client. There is no privity of contract between our respective clients, irrespective of your attempts to construct a legal argument to the contrary.
>
> 3. The UAE based Qasr Al Bahar remains indispensable party to the settlement of your claim not our, irrespective of your disagreement or wrongful allegations against our client. ...
>
> 4. Your allegations are clearly negated and directly contradicted by your client's own admissions and negotiations of a settlement agreement with the UAE based Qasr Al Bahar establishing among other matters, the following:
>
> The alleged demurrage charges in the UAE (which are now paradoxically and wrongfully alleging as falling under our client's responsibility and which form the major part of your alleged claim against our client);

8

*The defective condition of the cranes of the subject MV "Ocean Gulf" were the cause of substantial delays in loading and unloading in several previous shipments totally unrelated to our client, and were certainly the reason for the delay in unloading our client's goods in Kuwait and for our client's damages;*

*MV "Ocean Gulf" was already in the UAE also for reasons unrelated to our client, and its shipment of our client's goods was in fact agreed by your client and the UAE bases Qasr Al Bahar as a part of mitigating your client's losses resulting from the cancellation of some shipment from the UAE to India.*

*5. Because of the clearly defective condition of the cranes of the subject MV "Ocean Gulf", our client was compelled to lease additional cranes and equipment to expedite the unloading process at Kuwait, and suffered and continue to suffer substantial damages of which your client has been duly notified.*

*6. Your Clients' Notice of Readiness is unduly premature, inaccurate and defective on its facts.*

*7. Our client has never seen or accepted the alleged arbitration clause recently transmitted, irrespective of your legal gymnastics. ..." (sic)*

15. On 7th October, Sahb replied to Anwar Al Bisher & Partners, explaining that Qasr Al Bahar had entered into an FOB sale contract with the Charterers. Furthermore, there was evidence that the Charterers signed a copy of the fixture negotiation and that they paid the freight under the charter party. Sabh also explained that on 12th May 2004, Anwar Al Bisher & Partner's previous company Al Wagayan, Al Awadhi & Al Saif, sent a fax whereby they made an allegation of a "contractual breach" by the Owners. Therefore, it was the Owners' case that there was clear evidence that Arabian Industrial and Construction Group were the true charterers and a party to the charter party. Furthermore, it was the Owners' evidence that Qasr Al Bahar were the shippers of the cargo and were not a party to the charter party. The Owners also referred to difficulties obtaining demurrage from the shippers. However, this was a matter for the Charterers to reconcile and had no bearing on the Charterers' obligation to pay load port demurrage under the terms of the charter party.

9

16. The Owners provided evidence from Kaser Al Bahar Tiles Industry showing that they sold 32,509 tonnes of aggregate limestone to Arabian Industrial & Construction Group for shipment in May 2004, where the carrying vessel was the "OCEAN GULF". Kaser Al Bahar Tiles Industry also confirmed that they introduced Arabian Industrial & Construction Group to the Owners in order to arrange the charter party. Furthermore, that Mr Saad H. Al Monawer was the owner of Arabian Industrial & Construction Group and that his company paid the freight under the charter party.

17. The Owners also provided evidence of a freight invoice made out in the sum of US$284,453.75 and drawn on the "Arabian Group" in respect of 100% freight payable under the charter party. They also provided a statement from their bank, Gulf Bank, confirming that payment had been received from "ARABIC GROUP FOR INDUSTRY AND CONSTRUCTION". Also, the Owners provided evidence of a letter of undertaking issued by Arabian Industrial & Construction Group, requesting that the Owners release the cargo at the discharge port because the bills of lading had not arrived. The bills of lading stated that the Gulf Bank were the consignees of the cargo and that Arabian Industrial & Construction Group were the Notify Party.

18. On 18th October, I made a final and peremptory order that the Charterers should serve any further defence submissions on or before 27th October. The terms of the order made it clear that if they failed to serve any further defence submissions within the time limit set down, I would proceed to my final arbitration ward.

19. On 26th October, Anwar Al Bisher & Partners sent a fax whereby they continued to allege that the Owners had fabricated the claim against their clients. They further alleged that it was Kasr Al Bahar's responsibility to deliver the cargo to Kuwait. They also alleged that the Owners had fraudulently acquired the Charterers' signatures on various documents and that there was no valid arbitration agreement between the parties. Thereafter, the Charterers and their lawyers failed to communicate with me.

20. On 1st November, I notified the parties that I was proceeding to my final arbitration award.

21. Given the nature of the Charterers' defence, I carefully examined the submissions and evidence put before me by the Owners in the same way that I would have done had the Charterers put the Owners to strict proof of their claim.

22. I am satisfied from the evidence before me that the charter party was performed and that the cargo was loaded and discharged in accordance with the terms agreed between the parties on 27th April 2004. However, the issues of the true identity of the Charterers and unpaid demurrage remained to be resolved.

23. First, I shall deal with the true identity of the Charterers and whether there was a valid arbitration agreement between the parties. Although I have not been asked to rule on my own jurisdiction in this matter, it is helpful if I refer the parties to Section 30 of the Arbitration Act 1996, which provides as follows:

    *"Unless otherwise agreed by the parties, the arbitral tribunal may rule on its own substantive jurisdiction, that is, as to-*
    *(a) whether there is a valid arbitration agreement,"*

24. Neither party provided a signed copy of the charter party. Under English law it is not necessary from an agreement to be in writing or signed by one or more of the parties. An oral agreement is sufficient for a binding contract. However, the Owners provided a copy of the fixture negotiation dated 27th April 2004, which had a manuscript entry and was signed *"Accepted by Saad H Al Monawer"*. The fixture negotiation referred to the Charterers as being "A/C ARABIAN GROUP". The evidence of the shippers, Kaser Al Bahar Tiles Industry, was that the Charterers were Arabian Industrial & Construction Group, a company owned by Mr Saad H Al Monawer. Furthermore, the evidence was that

11

the Arabic Group for Industry & Construction effected payment of freight and that the Arabian Industrial & Construction Group provided a letter of indemnity when the bills of lading failed to arrive at the discharge port. Given that the Charterers failed to provide a copy of their contract with Kaser Al Bahar Tiles Industry, which would have confirmed their evidence that they were the CIF buyers of the cargo, or provided forensic evidence that the signature of Mr Saad H Al Monawer was fraudulent or provided evidence that it was fraudulently obtained, I accept the Owners' evidence that Arabian Industrial and Construction Group of Kuwait are the true Charterers under this charter party.

25. I now turn to the issue of whether there was an arbitration agreement between the parties. The fixture negotiation referred to the Gencon 94 form charterparty. Box no. 25 of the Gencon form provides for *"Law and Arbitration (state 19(a), 19(b) or 19(c); if 19(c) agreed also state Place of Arbitration) (if not filled in 19(a) shall apply) (Cl.19)"*. Since the fixture negation did not refer to the place of arbitration, Box no. 25 clearly states that the provisions of clause 19(a) will prevail. Clause 19(a) provides for arbitration in London in accordance with English law. Therefore, I am satisfied that the parties agreed that any disputes under this charter party be referred to arbitration in London in accordance with English law.

26. Finally, I turn to the merits of the Owners' claim, namely that for unpaid demurrage. The relevant provisions of the Charter were as follows:

> *"5 - LOAD ETRMS 20,000 MT PWWD, FRIDAYS/HOLIDAYS INCLUSIVE*
> *6 - DIS TERMS, 15,000 MT PWWD, FRIDAYS/HOLIDAYS INCLUSIVE ...*
> *13 - DEM USD 32,000 PER DAY PRO RATA, HALF DESPATCH, USD 16,000, ALL*
> *WORKING* TIME DSAVED BOTH END"

27. The Owners provided copies of the Statements of Fact from both the load and discharge ports, together with their lay time calculations. Although the Charterers alleged that the loading and discharging operations were delayed due to crane breakdowns, the Charterers bear the burden of showing that the Vessel was delayed due to the Owners' fault. However, the Charterers provided no evidence to support their allegation.

12

28. Having considered the Owners' evidence, I am satisfied that the Owners' calculations took account of time lost due to crane breakdowns. I further agree with the Owners' calculations that the Charterers incurred demurrage at the load port in the sum of (3 days 21 hours x US$32,000 days) US$124,000 and at the discharge port in the sum of (5 days 1 hour 22 minutes x US$32,000) US$161,822.22. I have therefore awarded the Owners the sum of (US$124,000 + US$161,822.22) US$285,822.22.

29. Given the provision in the fixture negotiation that discharge port demurrage should be paid prior to completion of discharge, I have awarded interest at a commercial rate on the sum awarded from 13th May 2004, being the date that discharge was completed.

30. The Owners are entitled to their costs of this final arbitration award in accordance with the normal rule on costs following the event.

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

AND

<u>IN THE MATTER OF AN ARBITRATION</u>

B E T W E E N

Richmond Mercantile Ltd FZC of Sharjah U.A.E.
Claimants
(Owners)

and

Arabian Industrial and Construction Group of Kuwait
Respondents
(Charterers)

**"OCEAN GULF"**

Charter party dated 27th April 2004

**FINAL ARBITRATION AWARD**

3.